-1-

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **LIEUTENANT NEIL WELCH**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAFN: |
| ) | |
| **CITY OF ATLANTA**, and ) | |
| **CHIEF RODNEY BRYANT**, ) | |
| in his individual capacity, ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

### COMPLAINT FOR MONETARY DAMAGES

Plaintiff, Neil Welch, by and through his undersigned counsel, files this action against Defendants City of Atlanta and Chief Rodney Bryant using 42 U.S.C. § 1983 to vindicate his rights under the equal protection clause of the Fourteenth Amendment of the U.S. Constitution, and Title VII, 42 U.S.C § 2000 et seq.

### JURISDICTION AND VENUE

1.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. § 1983.

2.

This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201 and 2202. This Court may also grant injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

3.

Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events and omissions giving rise to Lt. Welch's claims occurred within this District and Division and (2) Defendants reside and transact business in this District and Division.

**PARTIES**

4.

At all times relevant to this Complaint, **Plaintiff Neil Welch** was a citizen of the United States and a resident of Georgia. Welch is currently a highly decorated Lieutenant Officer for the Atlanta Police Department. At all times relevant to this Complaint, Welch had clearly established legal rights under state and federal law and the United States Constitution. Welch submits himself to the jurisdiction and venue of this Court and is entitled to bring this action under state and federal law for all general, special, and any other permissible damages.

5.

At all times relevant to this Complaint, **Defendant Rodney Bryant** is a United States citizen, a Georgia resident, and the sworn Police Chief for the City of Atlanta. At all relevant times to this Complaint, Bryant was acting under the color of state and federal laws. At all relevant times, Bryant was subject to the laws of the State of Georgia and the Constitution of the United States. At all relevant times, Bryant was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines, and regulations of the Atlanta Police Department, while upholding his responsibility as Chief of Police for the City of Atlanta. Bryant has always known, since being Chief of APD, that the City charter prohibits the type of discrimination that excludes an APD officer from obtaining any particular position based on race.

Mr. Welch is using 42 U.S.C. § 1983 and 42 U.S.C § 2000 et seq and 42 U.S.C. § 1981 through the enforcement mechanism of 42 U.S.C. § 1983, other applicable federal laws as the vehicle to sue Bryant in his individual capacity regarding federal claims. Bryant may be served, personally, at his place of employment.

6.

**Defendant City of Atlanta** is a municipality organized and existing under the laws of the State of Georgia, County of Fulton, and has been so for a period

preceding six months prior to the filing of this case. Also, at the time of the subject event that has given rise to this lawsuit, the City of Atlanta was the public employer of Defendant Bryant, as well as the public employer of Plaintiff Welch.

The City of Atlanta has developed, promoted, and condoned a pattern, practice, and policy of strictly race-based decision-making with respect to appointing or hiring officers to fill the position of SWAT Commander, and this practice since the early 2000s, when Chief Pennington brought the practice of reserving a certain numbers of high ranking positions for a certain race as a form of so-called balancing. The effect of this practice for Plaintiff and other APD Officers is to exclude him/her from a position reserved for a person of a different race.

Welch is using the U.S. Constitution, federal statutes, 42 U.S.C. § 1983, and other applicable federal laws, as the vehicle to sue the City of Atlanta regarding his federal claims. The City of Atlanta may be served by serving its Mayor, personally, at his place of employment.

## STATEMENT OF FACTS

7.
Lt. Welch began working for APD in July 2001.

preceding six months prior to the filing of this case. Also, at the time of the subject event that has given rise to this lawsuit, the City of Atlanta was the public employer of Defendant Bryant, as well as the public employer of Plaintiff Welch.

The City of Atlanta has developed, promoted, and condoned a pattern, practice, and policy of strictly race-based decision-making with respect to appointing or hiring officers to fill the position of SWAT Commander, and this practice since the early 2000s, when Chief Pennington brought the practice of reserving a certain numbers of high ranking positions for a certain race as a form of so-called balancing. The effect of this practice for Plaintiff and other APD Officers is to exclude him/her from a position reserved for a person of a different race.

Welch is using the U.S. Constitution, federal statutes, 42 U.S.C. § 1983, and other applicable federal laws, as the vehicle to sue the City of Atlanta regarding his federal claims. The City of Atlanta may be served by serving its Mayor, personally, at his place of employment.

## STATEMENT OF FACTS

7.
Lt. Welch began working for APD in July 2001.

8.

Welch has always been a high achiever and devoted APD officer. In 2014, Welch placed 2nd on the Sergeant (Sgt.) exam and was rightfully promoted to the rank of Sgt.

9.

In 2020, Welch placed 1st on the Lieutenant (Lt.) exam and was rightfully promoted to the rank of Lt.

10.

For years, Welch was both an officer and a sergeant assigned to APD's specialized S.W.A.T. Team/Bomb Squad.

11.

Welch has over 6,550 training hours: including 1,225 hours of Bombs and Explosives Training, 1,162 hours of Tactical Training, 911 hours of Firearms Training, and 411 hours of Leadership Training.

12.

Despite this training and an exemplary track record, APD command staff gave the position of S.W.A.T. Commander to a much less qualified officer, an African American officer.

13.

In fact, the position of SWAT Commander has been reserved for, and held by, and African-America since 2014, which is of no surprise, given the fact documented evidence demonstrated a like practice for the Captain and Major positions held by officers in Patrol Zones 1-6 from 2010 through 2019, at the very least. (See Ex. 1, (See Ex. 1, Trial Tr. Chief Turner, 22:21-23:13, 24:24-25:8, 27:16;28:8.)

14.

Based on documentary evidence, and statements made to Welch, Lt. Welch has been excluded from being even considered for the position of Commander of the Atlanta Police Department's S.W.A.T. Team/Bomb Squad based solely on race: Lt. Welch's race (Caucasian) did not match the race of the officer being replaced (African American) in January 2021.

15.

The officer in question, who has obtained the position of SWAT Commander, is African American, with far less qualifications than Lieutenant Welch; in fact, at the time this African American officer obtained the subject SWAT Commander position, lieutenant Welch was the only Lieutenant to have SWAT

Experience, mindful that as a matter fact, to obtain the position of SWAT Commander at all times relevant, you must have been a lieutenant.

16.

At the time that Lt. Welch was passed over for the Subject SWAT Commander position (January, 6 2021 personnel order signed by Bryan, and effective January 14, 2021 ), his division leader knew he wanted the position and so did Defendant Bryant prior to the decision being made—mindful that it did not even matter because Bryant was only replacing the position with an African American per policy, custom, and practice.

17.

Again, that Mr. Welch was excluded from being considered for the position of S.W.A.T. Commander because of his race should come as no surprise given the documentary and testimonial evidence regarding APD Zones 1-6, which excluded APD officers from being even considered from certain positions because of their race. (See Ex. 1, Trial Tr. Chief Turner, 22:21-23:13 (Mar. 22, 2022:

> "**Q So for a select number of positions,** those positions that were occupied, let's say, by an African American captain, a select number, as you testified,

you were looking for the most qualified African-American lieutenant to replace the African- American captain; is that true?

A Yes.

Q So my question is: **In a select number of cases, a white officer, lieutenant, was excluded from consideration when you were replacing an African American captain; is that not true**?

A **Yes, that's true**.

Q Okay. And vice versa, if you were replacing a white captain, you were looking for the most qualified white lieutenant?

A That's correct.

Q       **Therefore, an African American lieutenant was   excluded    from consideration in that scenario**?

A In that scenario, yes.

Q Thank you."

_____

(See Ex. 1, Trial Tr. Chief Turner, 27:16-28:8 (Mar. 22, 2022)).

"Q Zone 2 is an example of one of the zones that were reserved for black captains; is that true?

> A There was a black captain assigned to Zone 2. "Reserved", I refuse to use that term.
>
> Q All right. But it was a -- it was a situation where since there was a black captain in office, he or she was going to be replaced by a well-qualified African- American officer; that's true?
>
> A That's correct.
>
> Q And in effect, **that policy, that practice**, excluded from consideration people of every other race; is that not true?
>
> A For that particular position, yes.
>
> Q For that particular position, yes. Now, Zone 2, did you ever consider -- you never considered -- given that position policy, you never considered Lieutenant Joyner for the position of captain in Zone 2, did you?
>
> A No, I did not."

_____

(See Ex. 1, Trial Tr. Chief Turner, 24:24-25:8 (Mar. 22, 2022:

Q Thank you, Chief. And in effecting this policy, effecting this heartfelt desire, you essentially **reserved a certain number of positions** for captain in the zones for African Americans; is that right?

A Yes.

Q And vice versa, in meeting this desire, this worthy desire, you **reserved a number of captain positions** in Zones 1 through 6, the field zones, for white officers; is that true?

A That is correct.

18.

There is no material constant commonalities in the required qualifications exhibited by the past S.W.A.T. Commanders, except for race and being a lieutenant, over the past eight to ten years.

19.

In line with this obvious discriminatory policy, Bryant made Welch the commander of the Apex Unit, replacing, you guessed it: a white officer.

20.

Defendant City of Atlanta's Municipal Code prohibits racial discrimination in personnel decisions: "**Section 3-502. - Discrimination prohibited.** It shall be the

policy of the city, its departments, and boards that **all** personnel matters shall be determined solely on the basis of merit and qualification, without respect to race, color, creed, religion, sex, domestic relationship status, parental status, familial status, sexual orientation, national origin, political affiliation, gender identity or racial profiling." ("see also **Sec. 114-166. - Policy.** It shall be the policy of the city to guarantee equal opportunity to all applicants and to all employees. Discrimination against any person in recruitment, examination, **appointment**, training, **promotion**, retention, discipline or any other aspect of personnel administration because of political or religious opinions or affiliations or **because of race**, color, religion, age, disability, sex, sexual orientation, gender identity, national origin, or other non merit factors shall be prohibited.")

## COUNT I
## 42 U.S.C. § 1983 — VIOLATION OF FOURTEENTH AMENDMENT RIGHTS TO EQUAL PROTECTION
**(***Claim Against Defendants Bryant and City of Atlanta***)**

"**Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people,**" *Rice v. Cayetano,* 528 U.S. 495, 517 (2000), **and therefore "are contrary to our traditions and hence constitutionally suspect,"** *Bolling v. Sharpe,* 347 U.S. 497, 499 (1954). " '[B]ecause racial characteristics so seldom provide a relevant basis for disparate treatment,' " *Richmond v. J.A. Croson Co.,* 488 U.S. 469, 505 (1989) (quoting *Fullilove v. Klutznick,* 448 U.S. 448, 533–534 (1980) (Stevens, J., dissenting)), **"the Equal Protection Clause**

> **demands that racial classifications ... be subjected to the 'most rigid scrutiny.' "** *Loving v. Virginia,* 388 U.S. 1, 11 (1967). **To implement these canons, judicial review must begin from the position that "any official action that treats a person differently on account of his race or ethnic origin is inherently suspect."** *Fullilove, supra,* 448 U.S. at 523, (Stewart, J., dissenting); *McLaughlin v. Florida,* 379 U.S. 184, 192 (1964). **Strict scrutiny is a searching examination, and it is the government that bears the burden to prove " 'that the reasons for any [racial] classification [are] clearly identified and unquestionably legitimate,' "** *Croson, supra,* at 505 (quoting *Fullilove, supra,* 448 U.S. at 533–535 (Stevens, J., dissenting)). *Grutter* **made clear that racial "classifications are constitutional only if they are narrowly tailored to further compelling governmental interests."** 539 U.S., at 326.

[Fisher v. Univ. of Texas at Austin, 570 U.S. 297, 309–10 (2013) (internal quotation marks omitted).]

> **The history of racial classifications in this country suggests that blind judicial deference to legislative or executive pronouncements of necessity has no place in equal protection analysis.**

[City of Richmond v. J.A. Croson Co., 488 U.S. 469, 501 (1989) (citing Korematsu v. United States, 323 U.S. 214, 235–240 (1944) (Murphy, J., dissenting).

21.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-20, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

22.

Based on the incorporated facts to support this Count, and the facts set forth in this Count, Chief Bryant implemented, condoned a pattern, practice, and policy

of intentionally discriminating against Plaintiff and other City of Atlanta Police officers based on their race. In particular to Plaintiff, Defendants intentionally excluded from consideration, and from the position itself, Mr. Welch from the position of SWAT Commander—due to the fact that this position, at the time of Mr. Welch's exclusion, was reserved for an African American only. position was reserved This discrimination was for the purposes of disqualifying police officers from being appointed to the position of Captain or higher. **This policy hurts everyone.**

23.

Because the Fourteenth Amendment to the Constitution guarantees that citizens will not be discriminated against because of their race, and because 42 U.S.C. § 1983 prohibits state actors such as Bryant from violating constitutional rights, Bryant is liable for her unconstitutional conduct. Consequently, Welch is entitled to all compensation under governing law.

## COUNT II
## 42 U.S.C. § 1983 — MONELL CLAIM — VIOLATION OF FOURTEENTH AMENDMENT RIGHTS TO EQUAL PROTECTION
**(***Claim Against Defendant City of Atlanta***)**

24.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-23, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

25.

Based on the incorporated facts to support this Count, and the facts set forth in this Count, the City of Atlanta implemented and condoned a pattern, practice, and policy of intentionally discriminating against Plaintiff and other City of Atlanta Police officers based on their race, and this discrimination was done for the purposes of prohibiting police officers from obtaining the position of SWAT Commander because of their race. As such, Welch is entitled to all permissible damages under governing law.

## COUNT III
### TITLE VII CLAIM BECAUSE RACE WAS A MOTIVATING FACTOR REGADING THE EXLCUSION OF MR. WELCH FROM BOTH CONSIDERATION AND ACTUALLY OBTAINING THE POSTION OF SWAT COMMANDER
(*Claim Against City of Atlanta*)

26.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-25, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

27.

Based on the incorporated facts to support this Count, race was at least one motivating factor with respect to excluding Mr. Welch from consideration for, and actually obtaining, the position of SWAT Commander at issue in this case. As such, Mr. Welch is entitled to all permissible damages under governing law.

## COUNT IV
### SECTION 1981 DICRIMIATION THROUGH THE ENFROCEMENT MECHANSIMOF SECTION 1983 See [Holmes v. City of Ft. Pierce, No. 20-13170, 2022 U.S. App. LEXIS 2607, at *11 (11th Cir. Jan. 27, 2022)](#)
(*Claim Against All Defendants*)

28.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-27, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

29.

Based on the incorporated facts to support this Count, Defendant Bryant in his individual capacity racially discriminated against Mr. Welch, intentionally so, by refusing to even consider Welch for the subject position of SWAT Commander and refusing to place Mr. Welch in the subject position of SWAT Commander, because of Mr. Welch's race. Additionally the municipality is liable because Bryant was both the City's final decision maker with respect to appoint the person who occupies the SWAT Commander position, as well as the City's final policy maker for APD, as Chief of Police, who ratified and enforced said racially discriminatory policy/custom/practice--and there is no doubt that the moving force that drove the racially discrimination against Mr. Welch was the actual policy/custom/practice as outlined in this Complaint. There is absolutely zero meaningful administrative review over Bryant's personnel decisions, as years of litigation on a similar matter have demonstrated with respect to the personal decisions made by the Atlanta Police Department's Chief of Police. As such, Welch is entitled to all permissible damages under controlling law.

## COUNT IV
## ATTORNEY FEES
30.

**Based on the facts alleged in this complaint,** Plaintiff is entitled to attorney fees under all applicable laws.

## COUNT IV
## PUNITIVE DAMAGES
31.

Punitive Damages are sought only against Defendant Bryant in his individual capacity.

**WHEREFORE**, Lt. Welch prays for a trial by jury of twelve and as follows:

(a) That process issue and service be had on each Defendant;

(b) That this Court determine all legal issues and thus permit a jury to determine those issue not determined by this Court;

(c) That a jury trial be had on all issues so triable;

(d) That this Court award Plaintiff reasonable attorneys' fees and costs; and

(e) That plaintiff be awarded all damages permissible under law including compensatory damages, punitive damages, special damages;

(f) That Plaintiff receives such other and further relief as the Court deems just and proper.

Respectfully submitted this 16th day of November, 2022.

/s/MARIO WILLIAMS
Mario B. Williams (Ga # 235254)

**HDR, LLC**
44 Broad Street NW, Suite 200
Atlanta, GA 30303
404-254-0442
mwilliams@hdrattorneys.com